UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JENNIFER M.,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. 3:18-cv-05137-TLF

ORDER REVERSING DEFENDANT'S DECISION TO DENY BENEFITS AND REMANDING FOR FURTHER PROCEEDINGS

Jennifer M. has brought this matter for judicial review of defendant's denial of her applications for disability insurance and supplemental security income (SSI) benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons below, the undersigned reverses defendant's decision to deny benefits and remands for further proceedings.

I.      PROCEDURAL BACKGROUND

Plaintiff filed applications for disability insurance and supplemental security income benefits in August 2014, alleging she became disabled as of March 1, 2014. Dkt. 9, Administrative Record (AR) 69. Both applications were denied at the initial and reconsideration

ORDER REVERSING DEFENDANT'S DECISION TO DENY BENEFITS AND REMANDING FOR FURTHER PROCEEDINGS - 1

administrative review levels. *Id.* A hearing was held before an administrative law judge (ALJ). *Id.* Plaintiff appeared and testified, as did a vocational expert. AR 112-45. The ALJ determined that plaintiff can perform jobs existing in significant numbers in the national economy and therefore is not disabled. AR 69-82. Plaintiff filed a complaint with this Court, seeking reversal and remand for an award of benefits or, alternatively, for further proceedings.

## II. STANDARD OF REVIEW

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error, or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This requires "more than a mere scintilla," though "less than a preponderance" of the evidence. *Id.*; *Trevizo v. Berryhill*, 871 F.3d 664, 674-75 (9th Cir. 2017).

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). It must weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court considers in its review only the reasons the ALJ identified and may not affirm for a different reason. *Id.* Furthermore, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (citations omitted). "If the evidence admits of more than one rational interpretation," the Court must uphold the ALJ's finding. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). It is unnecessary for the ALJ to "discuss *all* evidence presented". *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The

ALJ must only explain why "significant probative evidence has been rejected." *Id.* The Court should consider that "'[w]here there is conflicting evidence sufficient to support either outcome,'" the Court "'must affirm the decision actually made.'" *Id.* (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

III. ISSUES FOR REVEW

1. Did the ALJ provide adequate reasons to reject an examining psychologist's opinion?
2. Did the ALJ provide adequate reasons to discount lay testimony from plaintiff's mother?
3. Did the ALJ provide adequate reasons to reject plaintiff's testimony?
4. If the ALJ committed reversible errors, should the Court remand with directions to award benefits?

IV. DISCUSSION

The Commissioner uses a five-step sequential evaluation process to determine if a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. At step four of that process, a claimant's residual functional capacity (RFC) is assessed to determine whether past relevant work can be performed, and, if necessary, at step five to determine whether an adjustment to other work can be made. *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013). At step five, the Commissioner has the burden of proof, which can be met by showing a significant number of jobs exist in the national economy that the claimant can perform. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(e), 416.920(e).

A. Medical Opinion Evidence

The ALJ erred in rejecting the medical opinion of an examining psychologist regarding plaintiff's mental-health limitations.

An ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). Even when a treating or examining physician's opinion is contradicted, an ALJ may only reject that opinion "by providing specific and legitimate reasons that are supported by substantial evidence." *Id.*

R.A. Cline, Psy.D., completed psychological evaluations of plaintiff in July 2014 and May 2016. In 2014, Dr. Cline performed a clinical interview and mental-status examination. AR 576-80. She noted that plaintiff scored in the "marked to severe" range on anxiety and depression inventories (BAI and BDI-II). AR 577.

On the 2014 examination, Dr. Cline observed that plaintiff was "clearly very anxious" in her attitude and behavior and that her mood and affect were also anxious. AR 580. Dr. Cline noted that plaintiff reported recent suicidal ideation and self-mutilating behavior. *Id.* She found that plaintiff needed extra cues in a memory test and that her concentration, insight, and judgment "appear variable." *Id.*

Dr. Cline diagnosed plaintiff in 2014 with "Major depressive disorder, recurrent, moderate"; "Anxiety disorder NOS with features of GAD and panic disorder"; chronic post-traumatic stress disorder (PTSD), and "Personality disorder NOS with strong traits of borderline personality disorder." AR 578. Based on plaintiff's mental-status exam and self-reports, Dr. Cline assessed her GAF score at 50, indicating serious limitations in her ability to perform basic tasks of daily life. *Id.*; *England v. Astrue*, 490 F.3d 1017, 1023 n.8 (8th Cir. 2007); Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) ("DSM-IV-TR") at 34.

Dr. Cline opined in 2014 that plaintiff would have marked limitations in communicating and performing effectively in a work setting and completing a normal work day and week without interruptions from psychologically based symptoms. AR 579. She opined that plaintiff would also be moderately limited in most other basic work activities. AR 578-79. She estimated that plaintiff's impairments would last 9 to 12 months and opined that plaintiff's conditions might improve with medications and therapy. AR 579.[1]

In her 2016 evaluation, Dr. Cline observed that these conditions had persisted despite treatment. AR 804. Dr. Cline reviewed her prior evaluation and again performed a clinical interview and mental status examination. She again found that plaintiff scored in the marked to severe range in both anxiety and depression inventories. AR 802-03.

While Dr. Cline found that plaintiff's cognitive signs were mostly within normal limits, she also observed that plaintiff was agitated and could not keep still, "kept her hoodie up," and showed an anxious mood and affect. AR 805-06. Dr. Cline noted plaintiff reported ongoing suicidal ideation and had self-mutilated that week. AR 805. She made a primary diagnosis of borderline personality disorder, and also diagnosed chronic PTSD, "[u]nspecified mood disorder," and "[u]nspecified anxiety disorder with features of panic disorder and [generalized anxiety disorder]." AR 803.

Dr. Cline opined in 2016, as she had in 2014, that plaintiff's conditions would cause marked limitations in communicating and performing effectively in a work setting and completing a normal work day and week without interruptions from psychologically based

---

[1] After Dr. Cline completed her 2014 evaluation, Faulder Colby, Ph.D., reviewed it and found it supported, agreeing with Dr. Cline's opinions as to plaintiff's diagnoses and limitations. AR 795-97. Plaintiff assigns error to the ALJ's failure to mention Dr. Colby's opinion. Dkt. 13, p. 7. Because Dr. Colby's opinion was the same as Dr. Cline's and the Court concludes that the ALJ failed to give adequate reasons to reject Dr. Cline's opinion, the Commissioner on remand should also assess the amount of weight Dr. Colby's opinion should receive.

symptoms. AR 804. She added that plaintiff would also have marked limitations in maintaining appropriate behavior in a workplace. *Id.* Dr. Cline estimated that these impairments would last at least 12 months. *Id.*

The ALJ gave "[l]ittle weight" to Dr. Cline's opinions. AR 78. However, none of the reasons the ALJ gave were either clear and convincing, or specific and legitimate; and the reasons were not supported by substantial evidence.

As a preliminary matter, plaintiff contends that the ALJ failed to give any reason for rejecting Dr. Cline's July 2014 opinion. The ALJ discussed the 2014 and 2016 opinions in the same paragraph. Immediately after summarizing the 2016 opinion, he wrote "[l]ittle weight is given to *this* opinion . . ." AR 78 (emphasis added). He did not expressly state what weight he assigned the 2014 opinion. Nonetheless, the Court construes the ALJ's analysis as applying to both of Dr. Cline's opinions. As the ALJ indicated, those opinions included the same limitations, other than an added "marked" limitation in the 2016 opinion. *Id.* The ALJ's reasons apply equally to the 2014 opinion. *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (court may draw "specific and legitimate inferences from the ALJ's opinion").

The ALJ concluded that Dr. Cline's opinions were inconsistent with the record. AR 31. He explained that "despite having some issues with her mental impairments, overall the claimant was able to control her impairments with medication and treatment and had generally normal mental status examination findings." AR 78. An opinion's consistency with the record is an important factor in assessing the weight to give the opinion. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).

The ALJ's finding of inconsistency is not supported by substantial evidence. First, the record does not support the ALJ's finding that plaintiff can "control her impairments with

ORDER REVERSING DEFENDANT'S DECISION TO
DENY BENEFITS AND REMANDING FOR FURTHER
PROCEEDINGS - 6

medication and treatment." AR 78. The treatment notes do not support the ALJ's conclusion: The record contains some "normal" mental-health signs, particularly with respect to plaintiff's cognitive abilities. *See* AR 658-69, 737 (noting full orientation, sufficient fund of knowledge, normal memory, insight, and judgment). But these notes do not undermine Dr. Cline's opinion, which was not based on plaintiff's cognitive impairments but on impairments related to anxiety, depression, bipolar disorder, and PTSD. Dr. Cline made similar observations to those the ALJ cites and nonetheless opined that plaintiff was markedly limited in several areas. AR 578-80, 804-06. She based those opinions on her interviews of plaintiff, results of anxiety and depression inventories, and Dr. Cline's observations of plaintiff's appearance and behavior. *Id.*

Dr. Cline's opinions are supported by notes from visits throughout the relevant period. Plaintiff's treating providers noted that she showed agitation, anhedonia, dysphoric mood, inappropriate and compulsive behavior, mood swings, paranoia, and pressured speech, and signs of depression. *See* AR 639, 659, 674, 737, 833, 840, 846, 874. These signs varied; at other visits, plaintiff's providers noted that she had unpressured speech, appropriate behavior, and/or euthymic mood. AR 658, 674-75, 718. Viewed as a whole, the record does not support the ALJ's conclusion that plaintiff's impairments were controlled with medication and treatment. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (Court may not affirm by locating quantum of supporting evidence and ignoring non-supporting evidence). In one of her most recent visit notes, plaintiff's provider noted that plaintiff "clearly appears manic today with rapid speech and inability to sit still." AR 833.

Nor does this treatment record support the ALJ's conclusion that plaintiff "had generally normal mental status examination findings." AR 78. Rather, as noted above, plaintiff's providers

ORDER REVERSING DEFENDANT'S DECISION TO
DENY BENEFITS AND REMANDING FOR FURTHER
PROCEEDINGS - 7

consistently noted abnormal findings in areas related to the impairments described by Dr. Cline. *See* AR 578-80, 804-06; *see also* AR 639, 659, 674, 737, 833, 840, 846, 874.

The ALJ also found that Dr. Cline's opinions were inconsistent with the opinion of the state-agency reviewing psychologists, noting that those experts, "while non-examining[,] are familiar with social security regulations." AR 78; *see* AR 155-57, 183-85. "The opinion of a nonexamining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999). Because the ALJ gave no other legitimate, supported reason to reject Dr. Cline's opinions, he could not rely on the opinions of the non-examining experts to do so.

Remand is required; the RFC did not account for limitations that Dr. Cline opined, and the ALJ failed to give either clear and convincing, or specific and legitimate reasons, supported by substantial evidence, to discount Dr. Cline's opinion.

Plaintiff also challenges the ALJ's decision to assign "little weight" to the GAF scores that Dr. Cline assessed. AR 79. Although a GAF score "standing alone" does "not control determinations of whether a [claimant's] mental impairments rise to the level of a disability," it is "relevant evidence" of the claimant's ability to function, and therefore "may be a useful measurement." *Garrison v. Colvin*, 759 F.3d 995, 1002 n. 4 (9th Cir. 2014); *England v. Astrue*, 490 F.3d 1017, 1023 n.8 (8th Cir. 2007). Accordingly, the Commissioner should consider the GAF scores that Dr. Cline's found when reassessing plaintiff's disability claim.

B. <u>Plaintiff's Testimony</u>

Plaintiff also contends that the ALJ erred in discounting her symptom testimony.

In weighing a plaintiff's testimony, an ALJ must use a two-step process. First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that

could reasonably be expected to produce some degree of the alleged symptoms. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). If the first step is satisfied, and provided there is no evidence of malingering, the second step allows the ALJ to reject the claimant's testimony of the severity of symptoms if the ALJ can provide specific findings and clear and convincing reasons for rejecting the claimant's testimony. *Id.*

Here, plaintiff testified regarding her past work and attempts to work; the medications she takes for bipolar disorder, anxiety, and to help her sleep; her daily activities and lack of a social life; her anxiety and bipolar symptoms; and her limitations from physical conditions. *See* AR 125-41.

The ALJ stated that he discounted plaintiff's testimony about her mental-health limitations, AR 75, and he stated broadly that "[t]he claimant's allegations are found to be not fully consistent with the evidence of record in this case" and "the medical findings do not support the existence of limitations greater than the above listed [RFC]." AR 76. In the RFC, the ALJ limited plaintiff to "simple, routine tasks that are Specific Vocational Preparation 1 or 2 type tasks; and no public contact, superficial contact with co-workers, and no teamwork." AR 74.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.*

Here, the ALJ failed to give any specific reasons for rejecting plaintiff's testimony about her mental health limitations. *See id.*; AR 76-77. Instead of providing specific, cogent reasons for rejecting plaintiff's testimony, the ALJ summarized mental-health treatment notes during the relevant period. *See* AR 75-77. He noted both positive and negative indications in 2014 and

2015. He noted some improvement in 2016, but also acknowledged that plaintiff showed heightened symptoms later in the year after she refrained from some of her medications. *See* AR 76-77.

The ALJ did not state any inferences, reasoning, or conclusions based on this record. *Id.* Accordingly, the ALJ failed to give legally sufficient reasons to discount plaintiff's testimony regarding her mental-health limitations. *See Reddick*, 157 F.3d at 725. The Commissioner must reweigh this evidence on remand.

C.  Lay Testimony

Finally, plaintiff contends the ALJ failed to give germane, supported reasons to reject the testimony that plaintiff's mother gave in third-party function reports from August and November 2014 and a declaration from October 2016. AR 310, 337, 372. Plaintiff's mother, Ms. Tiffany, testified about plaintiff's limitations from fatigue, lack of sleep, emotional issues, and problems with memory and concentration. *See* AR 311, 315, 338, 341-423, 373-74. The ALJ rejected this testimony, observing that plaintiff's mother is not a disinterested third party and has no medical training and finding that her testimony is inconsistent with the record as a whole. AR 78-79.

Because, as discussed above, the ALJ made numerous errors in evaluating both the medical evidence and plaintiff's testimony, and the ALJ relied on those flawed analyses in evaluating the lay witness testimony, the ALJ also erred in discounting the lay witness testimony.

And, the first two reasons the ALJ gave for rejecting Ms. Tiffany's testimony are invalid on their face. An ALJ cannot rely on a lay witness's lack of medical training to reject the witness's testimony, because medical expertise is irrelevant to the purposes of such testimony. *See Dodrill v. Shalala*, 12 F.3d 915, 918–19 (9th Cir. 1993) ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition."); SSR 06-03p, 2006 WL 2329993, at *2 ("[W]e may use evidence from 'other

sources,' as defined in 20 CFR 404.1513(d) and 416.913(d), to show the severity of the individual's impairment(s) and how it affects the individual's ability to function.... [I]nformation from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function."). Nor can an ALJ rely on the fact that the lay witness is not a disinterested third party. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) ("Such a broad rationale for rejection contradicts our insistence that, regardless of whether they are interested parties, friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [his or] her condition" [internal quotation marks omitted]).

D. <u>Remand for Further Proceedings</u>

Plaintiff asks that the Court remand for the Commissioner to calculate and award benefits. "The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court." *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (internal quotation marks omitted) (applying three-step credit-as-true test).

Although plaintiff contends that, if the improperly rejected evidence is credited as true, "outright benefits would be merited," she does not address how this case fulfills each of the required elements to remand for benefits. Dkt. 13, pp. 2, 15; *see Trevizo*, 871 F.3d at 682-83. The Court cannot conclude that "further administrative proceedings would serve no useful purpose." *See id.*

On remand, the ALJ should evaluate the entire record, including medical evidence, plaintiff's testimony, and the lay witness testimony. The ALJ should determine whether plaintiff has demonstrated that she is unable to perform her past relevant work, at step four and—if not—

whether she can perform other jobs existing in significant numbers in the national economy, at step five.

## CONCLUSION

Based on the above analysis, the Defendant's decision to deny benefits is REVERSED, and the matter is remanded to the Commissioner for further proceedings.

Dated this 12th day of July, 2019.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge